UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORINDA VASSIGH, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>BAI BRANDS LLC,<br><br>　　　　Defendant. | Case No. 14-cv-05127-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

　　　　Plaintiffs Dorinda Vassigh, Samantha Lewin, Richard Draeger, Tracey Hechler, and Mark Korabelnikov, on behalf of themselves and a purported class of similarly situated individuals, filed this action against Defendant Bai Brands LLC ("Bai") concerning the antioxidant-related statements printed on the product labels of "Bai5 Antioxidant Infusions" beverages.

　　　　Plaintiffs allege that Bai's product labels contain improper nutrient content claims in violation of the Federal Food, Drug, and Cosmetics Act ("FDCA").  Specifically, the labels include the phrases "Antioxidant Infusions," "Antioxidant Packed Beverage," "Antioxidant Packed," "We infuse the antioxidant power of the superfruit, add a splash of exotic fruit juices and voila!  You have 100% natural, free-radical crushing, Bai 5," "Antioxidant Goodness Inside," "Hello Antioxidants!," as well as a thermometer graphic, which Plaintiffs contend suggests "that the more beverage consumed, the more effective the antioxidant concoction will be."  Plaintiffs argue that these statements violate the FDA's antioxidant labeling requirements set forth in C.F.R. § 101.54(g), and that they would not have purchased Bai products had they known of Bai's noncompliance.

　　　　Vassigh, Lewin, and Draeger assert claims on behalf of a purported California class of Bai5 Antioxidant Infusions purchasers under the California Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, the California False Advertising Law (the "FAL"), *id. at* §

17500 *et seq*., and the California Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1750 *et seq*. Hechler asserts a claim on behalf of a purported New York class under New York General Business Law § 349 (the "NYGBL"). Korabelnikov asserts a claim on behalf of a purported Pennsylvania class under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL").

Plaintiffs filed their First Amended Complaint ("FAC") on February 6, 2015, Dkt. No. 16, and Bai moved to dismiss on March 9, 2015, Dkt. No. 30 ("Mot."). Plaintiffs opposed Bai's motion on April 3, 2015, Dkt. No. 34 ("Opp."), and Bai filed a reply on April 17, 2015, Dkt. No. 36 ("Reply"). The Court held oral argument on the motion on May 7, 2015. Having considered the submissions of the parties, the parties' oral arguments, and the relevant law, the Court hereby **GRANTS IN PART AND DENIES IN PART** Bai's Motions to Dismiss the FAC.

## I. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain sufficient facts to state a plausible claim on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). If the court dismisses the complaint, it should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other

facts." *Lopez v. Smith*, 203 F.3d 122, 1127 (9th Cir. 2000) (citation omitted). When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

## II.  DISCUSSION

Bai seeks to dismiss the FAC on several grounds. Bai argues that: (1) the allegations do not meet the pleading standards of Federal Rules of Civil Procedure 8 and 9(b); (2) Plaintiffs' claims are subject to implied preemption; (3) Plaintiffs' claims are preempted because the alleged misstatements do not violate the FDCA; (4) Plaintiffs do not state a cause of action under the "unfair" prong of the UCL; (5) Plaintiffs' claims concerning its Molokai Coconut product are contrary to judicially noticeable facts; and (6) Plaintiffs did not provide the statutorily-required notice pursuant to the CLRA.[1] The Court addresses each argument in turn.

### A.  Particularity Under Rules 8 and 9(b)

Claims under the CLRA, FAL, and the "fraudulent prong" of the UCL are generally held to the "reasonable consumer" standard. *See Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008). The same is true of the NYGBL and UTPCPL. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Prukala v. Elle*, 11 F. Supp. 3d 443, 447 (M.D. Pa. 2014). A plaintiff must show that consumers are "likely to be deceived" by the challenged statements. *Williams*, 552 F.3d at 938. (citation omitted); *see also Fink*, 714 F.3d at 741 ("Plaintiffs must establish that Time Warner's allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances.").

Bai contends that the FAC does not plead sufficient facts demonstrating that either Plaintiffs or a reasonable consumer would be deceived by the packaging of Bai5 Antioxidant Infusion beverages. Specifically, Bai asserts that the FAC does not identify what each plaintiff believed the allegedly misleading product labels meant or how each product failed to deliver on that expectation.

---

[1] Bai also asserts that several alleged misstatements challenged by Plaintiffs constitute non-actionable puffery. Mot. at 11. However, because the Court finds that the statements Bai challenges as non-actionable puffery do not constitute "nutrient content claims" as defined by the FDCA, the Court does not reach this question.

3

> So how were Plaintiffs misled? What did they expect after reading the Bai5 label? How did Bai5 fail to meet those expectations? What led Plaintiffs to conclude that they were misled? The FAC does not answer those questions and therefore it does not state a plausible claim, let alone comply with Rule 9(b).

Mot. at 8.

In response, Plaintiffs argue that they have pled sufficient facts to show that Bai's product labels would confuse a reasonable consumer. Plaintiffs' opposition directs the Court to paragraphs thirty-five through forty-two of the FAC, which cite several academic articles and generally describe how using the term "antioxidant" implies certain benefits that Plaintiffs assert Bai5 Antioxidant Infusions do not provide. Plaintiffs further allege that each Plaintiff "would not have purchased Bai5 Antioxidant Infusions, or would have paid significantly less for the products, had she known that these statements were unauthorized, and that Defendant misbranded the products and mischaracterized the amounts and nature of the nutrients and antioxidants inside." FAC ¶¶ 6-10.

Plaintiffs contend that neither Rule 8 nor Rule 9(b) requires more. For example, in a substantively similar case, Judge Whyte held that the plaintiff's allegation that a "label meant that the tea met a minimum nutritional requirement and that she would not have bought it, or paid a premium for it, had she known that it did not meet the minimum requirements for listing a product as containing antioxidants," was sufficient to state a plausible claim under the UCL, CLRA, and FAL. *Lanovaz v. Twinings North Am., Inc.*, No 12-cv-02646 RMW, 2013 WL 675929, *6 (N.D. Cal. Feb. 25, 2013). Similarly, in *Clancy v. The Bromley Tea Company*, Judge Tigar held that "alleg[ing] that Defendant's product labels and website were in violation of the Sherman Law, and that Plaintiff reasonably relied on those statements to purchase products he would not have purchased absent these allegedly deceptive statements" satisfies Rule 9(b)'s pleading requirements. No. 12-cv-03003 JST, 2013 WL 4081632, *10-11 (N.D. Cal. Aug. 9, 2013).

The Court agrees that—at least as to Plaintiffs' theory of why a reasonable consumer would be deceived—Plaintiffs have met the pleading requirements of Rules 8 and 9(b). The contrary case law cited by Bai is less persuasive then that cited by Plaintiffs, as the pleadings at

4

issue in Bai's cases offered absolutely no explanation of how consumers would be deceived. *See Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976 WHO, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ("Victor's opposition brief does not give a single argument or reason why the challenged statement is likely to deceive anyone."); *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272 PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013) ("Throughout their complaint, Plaintiffs fail to allege either that a 'reasonable consumer' would be deceived, or the circumstances in which they themselves read the labels of the named products and interpreted those labels differently, or both."); *Arroyo v. Pfizer, Inc.*, No. 12-cv-4030 EMC, 2013 WL 415607, at *4 (N.D. Cal. Jan. 31, 2013) (complaint did not plead "facts substantiating why the product does not work as advertised or explaining why Defendant's statements were false or misleading").

That is not the case here. Paragraphs thirty-five through forty-two of the FAC identify why Plaintiffs believe a reasonable consumer would be deceived by Bai's product labels, which, under Plaintiffs' theory, characterize the amount of antioxidants in Bai's beverages in violation of the FDCA. *See, e.g.,* FAC ¶ 41 ("Here, Bai5 Antioxidant Infusions misleads consumers into believing that the products are superior because they have been "infused" and "packed" with antioxidants, even though the products do not contain a single nutrient essential for human nutrition, with recognized antioxidant activity, and with an established RDI."). Absent a facially implausible theory, *see, e.g., Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), the Court will not "assume the role of the fact-finder in the guise of determining plausibility" when deciding a motion to dismiss. *Colucci v. ZonePerfect Nutrition Co*., No. 12-cv-2907 SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012); *see also Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1131 (N.D. Cal. 2013). Like Judge Whyte in *Lanovaz*, the Court does not find Plaintiffs' theory so facially implausible that dismissal is warranted on the pleadings. That Plaintiffs may turn out to be wrong does not render their allegations insufficiently specific under the Federal Rules.

Whether Plaintiffs have sufficiently alleged why *they* were deceived—as opposed to the hypothetical reasonable consumer—is a closer question. Paragraphs thirty-five through forty-two of the FAC hypothesize how consumers could be misled by labeling touting a product's

5

antioxidant content. However, those paragraphs do not allege that any of the individual Plaintiffs in this action experienced those types of confusion. Instead, after directing the Court to these eight paragraphs, Plaintiffs' opposition skips to the question of Article III and statutory standing, asserting that the allegations that Plaintiffs would not have purchased the Bai5 product but for the misrepresentations at issue satisfies the relevant standard. *See* Opp. at 17-19. That is a different question. Bai does not challenge Plaintiffs' standing; it asserts that Plaintiffs have not met either Rule 8 or Rule 9(b)'s pleading standards by failing to describe what each Plaintiff expected after reading the statements at issue or how the Bai5 product failed to live up to those expectations. *See* Reply at 8. In other words, Bai argues that even if Plaintiffs identified why hypothetical consumers may have been misled by antioxidant labeling, Plaintiffs have not explained in what way they were personally misled.

The Court finds Bai's argument on this point persuasive. Although Plaintiffs seek to represent a class of consumers who purchased Bai5 Antioxidant Infusion beverages, this action currently involves only Plaintiffs' individual claims that they were deceived by Bai's product labels. Accordingly, the FAC must necessarily allege the "who, what, when, where, and how" of the misconduct asserted by each individual Plaintiff. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (holding that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to CLRA and UCL claims where the plaintiff's claims sound in fraud) (citation and quotation marks omitted). In this case, Plaintiffs have made only the conclusory allegation that they "relied on statements and graphics" on bottles of BAi5 Antioxidant Infusions that characterized antioxidants "*such as* . . . [list of statements]." *See, e.g.,* FAC ¶ 8 (italics added). The FAC does not allege that any particular Plaintiff saw and/or relied on any particular statements, let alone describe what each Plaintiff believed the statements to mean at the time of purchase or how their Bai5 Antioxidant Infusions beverage failed to live up to the label's promises. Plaintiff must allege these facts in order to state a claim for relief. *See, e.g., Trazo*, 2013 WL 4083218 at *10 ("Plaintiffs fail to allege . . . the circumstances in which they themselves read the labels of the named products and interpreted those labels differently[.]"); *id.* ("Plaintiffs must connect the dots showing how the alleged misbranding misled plaintiffs . . . .");

*Arroyo*, 2013 WL 415607 at *8 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.").

Accordingly, the Court **GRANTS** Bai's Motion to Dismiss on this ground.

### B.     Implied Preemption

Defendants in food labeling cases frequently assert that claims brought pursuant to the UCL, CLRA, and FAL are preempted by the FDCA—even where state law imposes identical requirements as the FDCA—pursuant to the reasoning in *Perez v. Nidek Co., Ltd.,* 711 F.3d 1109 (9th Cir. 2013) and *Pom Wonderful LLC v. Coca–Cola Co.,* 679 F.3d 1170 (9th Cir. 2012). Courts in this District routinely reject this argument. *See, e.g., Victor*, 2014 WL 1028881 at *11; *Clancy*, 2013 WL 4081632 at *9; *Lanovaz*, 2013 WL 675929 at *5; *Khasin v. Hershey Co*., No. 15-cv-01862 EJD, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012); *Gustavson*, 961 F. Supp. 2d at 1119-20.

Bai contends that its preemption argument should not meet the same fate because its position is narrower than those rejected in the cases cited above. *See* Mot. at 14. Bai argues that only Plaintiffs' cause of action under the "unlawful" prong of the UCL is preempted, because that claim exists only "*because* the conduct [allegedly] violates the FDCA." *Id*. (quoting *Perez*, 711 F.3d at 1119-20) (emphasis in *Perez*). The lynchpin of Bai's argument is that the Sherman Law, *see* Cal. Health & Safety Code § 110670, simply incorporates the FDCA by reference, as opposed to "creat[ing] a private right of action or 'an independent right under state law.'" *Id*. at 15 (citation omitted). Accordingly, Bai argues that Plaintiffs are really seeking to enforce the FDCA, not the Sherman Law itself. Bai likens this case to the Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001), where the Court held that a state tort claim against a medical device manufacturer for defrauding the FDA in a pre-market approval process was impliedly preempted given the "delicate balance of statutory objectives" struck by the FDA's own authority to fight fraud perpetrated against the agency. *Id*. at 348.

Bais' narrower argument fails for two reasons. First, as with the broader preemption argument disavowed by Bai, courts in this District also routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman

7

Law. *See, e.g., Clancy*, 2013 WL 4081632 at *9 (distinguishing *Buckman* because "[t]his case does not involve a claim that intrudes so blatantly on the FDA's domain, and Defendants have failed to demonstrate that private rights of action under the Sherman Law interfere with the FDCA's regulatory processes in any comparable manner"); *Gustavson*, 961 F. Supp. 2d 1100, 1118 (distinguishing *Buckman* and finding no preemption in part because "the dangers arising out of food mislabeling are [not] even remotely equivalent to the 'unreasonable risk of illness or injury' presented by Class III medical devices") (citation omitted). Similarly, the Ninth Circuit recently held that an Arizona state-law failure-to-warn claim arising out of defendant's failure to comply with FDA requirements was not preempted because it involved a "state-law claim that is independent of the FDA's pre-market approval process that was at issue in *Buckman*." *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013).

Bai offers no compelling reason to depart from these well-reasoned decisions. States are generally free to enact statutes that parallel the requirements of federal law and to provide for private enforcement of those parallel obligations. *See, e.g., Stengel*, 704 F.3d at 1233. That is exactly what California has chosen to do with respect to the federal food labeling requirements at issue here. The Sherman Law expressly adopts the requirements of the FDCA as obligations under California law, *see* Cal. Health & Safety Code § 110670, and California law further provides a mechanism for private parties to enforce those obligations through the "unlawful" prong of the UCL, *see Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1361 (Cal. App. 2010) ("Virtually any law—federal, state or local—can serve as a predicate for an action" under the "unlawful" prong of the UCL.). Bai's observation that *Clancy* and *Gustavson* rejected the defendants' preemption arguments as to the "unlawful" prong of the UCL along with the plaintiffs' CLRA and FAL claims is a distinction without a difference. Decisions holding that claims X, Y, and Z are not preempted are no less persuasive when a party in a different case asserts that only claim X is preempted.

Second, although Bai's counsel did not fully endorse the position during the hearing, the preemption argument advanced in Bai's briefs rests on the observation that the Sherman Law incorporates the FDCA by reference, rather than listing out each individual requirement of the

8

statute line-by-line.  Bai asserts that this common legislative space-saving technique refutes *Clancy's* observation that the Sherman Law provides "a valid state cause of action even if the FDA ceased to exist," 2013 WL 4081632 at *9, because, if the "FDCA ceased to exist, there would be nothing for the Sherman Law to incorporate," *see* Reply at 14.  The Court finds Bai's argument unpersuasive.  Bai offers no logical reason to treat cut-and-pasted language differently than incorporated language.  Bai's argument simply seizes on a few words in the *Clancy* decision and twists them to support a result diametrically contrary to *Clancy's* holding.  Neither logic nor case law supports Bai's maneuver.  The relevant preemption inquiry is whether the Sherman Law imposes state-law requirements parallel to the FDCA (which it does), not whether, in some hypothetical world where the FDCA disappeared in a puff of smoke, the Sherman Law would still impose those requirements.

The Court **DENIES** Bai's Motion to Dismiss the FAC on the ground that it is impliedly preempted.

### C. Preemption of Claims Based on Statements that Do Not Violate the FDCA

Bai argues that, even if the UCL's private right of action under the "unlawful" prong is not preempted under *Buckman*, Plaintiffs' UCL claims cannot go forward because at least some of the product labels at issue do not violate the FDCA.  *See* Mot. at 13-14.  Bai asserts that 21 C.F.R. Section 101.54(g) "pertains to the level of antioxidants in a product, not simply their presence." *Id*. at 13 (emphasis removed).  According to Bai, this means that Plaintiffs' theory that every statement with "the magic word 'antioxidant,'" violates the FDCA must fail, as such statements simply convey the existence—but not necessarily the level—of antioxidants in the product.  *Id*. at 14.

The Court agrees with Bai's characterization of the regulation.  Nutrient content claim requirements only apply where a product label characterizes the level (as opposed to existence) of a nutrient.  "A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling . . . (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with [FDA] regulation[s]." 21 C.F.R. § 101.13(b).  21 C.F.R. § 101.54(g) regulates "nutrient content claims" using the term

9

"antioxidant." A nutrient content claim concerning antioxidants can be made when: (1) "[a]n RDI [reference daily intake] has been established for each of the nutrients"; (2) "[t]he nutrients that are the subject of the claim have recognized antioxidant activity"; (3) "[t]he level of each nutrient that is the subject of the claim is sufficient to qualify" for other subprovisions of the section; and (4) "[t]he names of the nutrients that are the subject of the claim are included as part of the claim" or are referenced elsewhere on the same panel. 21 C.F.R. § 101.54(g).

There is no dispute that the non-Molokai Coconut product labels at issue in this case did not meet the requirements of Section 101.54(g) because (among other reasons), an RDI has not been established for outside skin of coffee fruit.[2] Thus, the relevant question is whether those product labels trigger the nutrient content claim regulation by characterizing the level, as opposed to the mere existence, of antioxidants in Bai5 Antioxidant Infusion beverages. *See Food Labeling; Nutrient Content Claims: Definition for 'High Potency' and Definition of 'Antioxidant' for Use in Nutrient Content Claims for Dietary Supplements and Conventional Foods*, Final Rule, 62 Fed. Reg. 49868, 49873 (Sept. 23, 1997) (describing the Rule as "defining the circumstances in which claims that characterize the level of nutrients that have antioxidant activity, such as 'high in antioxidants' can be made in compliance with the requirements of the act").

This inquiry is often straightforward. Of course, characterizing a food as "high" in a particular nutrient qualifies as a nutrient content claim. In addition, the Nutrition Labeling and Education Act ("NLEA") defines some common terms used in nutrient content claims. For example, a product that claims to be "rich in" some nutrient must "contain[ ] 20 percent or more of the RDI or the DRV per reference amount customarily consumed." 21 C.F.R. § 101.54(b)(1). A product that claims to be a "good source" of some nutrient must "contain[ ] 10 to 19 percent of the RDI or the DRV per reference amount customarily consumed." 21 C.F.R. § 101.54(c)(1). Accordingly, product labels that use the words "rich in" or "good source" clearly qualify as nutrient content claims under the FDCA.

The statements at issue here are not so cut-and-dried, as none of the language printed on

---

[2] The Court addresses Bai's argument concerning its Molokai Coconut product, below.

1  Bai's labels is the subject of a regulatory definition. At least one court has found that this ends the
2  inquiry. In *Trazo,* Judge Grewal observed that "[a] specific, finite list [in a law or regulation]
3  implies that other terms are excluded," and therefore dismissed as preempted a claim challenging
4  the statement "natural source of antioxidants" because the term "source" cannot be "conflate[d]"
5  with the term "good source" (defined in 21 C.F.R. § 101.54(c)(1)), since doing so would go
6  beyond the boundaries of FDA's regulations. 2013 WL 4083218, at * 6. Judge Grewal found that
7  neither the term "source" alone or the words "natural source" together characterized the level of
8  antioxidants in the product, and therefore concluded that the plaintiff "fail [ed] to state a claim that
9  the[ ] products violated 21 C.F.R. § 101.54(g)." *Id.* at *9.

10  In contrast, in *Lanovaz*, Judge Whyte found that the same challenged statement—"natural
11  source of antioxidants"—was adequately pled as a nutrient content claim. 2013 WL 675929, at
12  *4. While "[t]he FDA has not officially defined 'source of' or 'natural source of' as making a
13  nutrient content claim," Judge Whyte found it persuasive that the FDA "has identified similar
14  terms such as 'excellent source of,' 'good source of,' 'contains,' and 'provides' as the operative
15  words in nutrient content claims." *Id.* at 5. The court also considered a March 24, 2011, warning
16  letter in which "the FDA advised [a company] that certain claims using the word 'source' were
17  nutrient content claims." *Id.* Judge Whyte concluded that the plaintiff "assert[ed] a 'nutrient
18  content claim' under state law that is identical to what the FDA describes as a nutrient content
19  claim" and that, therefore, "her state claims are not preempted." *Id*. Judge Tigar held similarly in
20  *Clancy*. *See* 2013 WL 4081632 ("[T]he Court cannot conclude that Plaintiff has failed to assert a
21  legitimate nutrient content claim under California law" and that "it would be inappropriate to
22  dismiss the claim as preempted."); *see also Salazar v. Hontest Tea, Inc.* No. 13-cv-02318 KJM
23  EFB, 2015 WL 75223, *5 (C.D. Cal. Jan. 6, 2015) (finding plaintiff's claim that label stating the
24  product was "packed" with antioxidants, among other statements, to plausibly allege violation of
25  FDA regulations).
26  The Court agrees with the latter opinions that statements may violate Section 101.54(g)
27  without using the exact words identified in the regulation. A defendant cannot escape liability
28  simply because it uses a synonym—such as "great source" or "excellent source"—instead of the

11

defined term "good source." The touchstone inquiry is whether the statement either expressly or implicitly characterizes the level of a nutrient in the product. *See* 21 C.F.R. § 101.13(b). In this case, Plaintiffs have submitted FDA letters warning companies that statements characterizing their products as "high," "powerful," "rich," "abundantly found," "fortified," and "packed with" antioxidants constitute nutrient content claims. *See* FAC, Exs. A-D.[3] The Court agrees that these statements characterize the level of antioxidants found within the promoted product. Accordingly, the Court finds that the statements that Bai5 Antioxidant Infusions beverages are "Antioxidant Packed" or are an "Antioxidant Packed Beverage"— which plausibly imply a particular level of antioxidants contained in the product—constitute nutrient content claims and are thus sufficient to survive Bai's motion to dismiss.

The Court reaches a different conclusion as to the remainder of the alleged misstatements. The statements "Antioxidant Infusions," "Antioxidant Goodness Inside," "Hello Antioxidants!," and "We infuse the antioxidant power of the superfruit, add a splash of exotic fruit juices and voila! You have 100% natural, free-radical crushing, Bai 5," as well as the thermometer graphic, do not plausibly characterize, either expressly or implicitly, the amount or level of antioxidants contained in the products. These statements may only reasonably be read to assert the undisputed fact that Bai5 Antioxidant Infusions beverages contain antioxidants. The FDCA makes a distinction between statements characterizing the level of antioxidants and statements that merely signal the existence of antioxidants, and the FDA has chosen to regulate only the former. *See* 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly *characterizes the level of a nutrient* of the type required to be in nutrition labeling . . . (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with [FDA]

---

[3] Bai asserts that FDA warning letters are irrelevant because the letters are "only 'informal and advisory' and 'do[] not commit FDA to taking enforcement action.'" Mot. at 16 (citation omitted). Of course, Bai is correct to a point. Warning letters are not formal enforcement actions and do not commit the FDA to taking enforcement action. However, Bai fails to explain why this renders FDA warning letters irrelevant or why a Court may not consider them when determining whether the facts alleged in a complaint set forth a plausible claim for relief. Even the decision cited by Bai for this proposition considered the proffered FDA warning letter before ultimately concluding that the statement at issue did not constitute a nutrient content claim. *See Craig v. Twinings N. Am., Inc.*, No. 14-cv-05214, 2015 WL 505867, at *7 (W.D. Ark. Feb. 5, 2015).

regulation[s].") (emphasis added). Plaintiffs' position would collapse this distinction. For example, if the statement "Hello Antioxidants!" characterizes the level of antioxidants in a product, no statement related to antioxidants could plausibly fall outside the scope of a nutrient content claim. The plain language of the FDCA does not support this result.

Accordingly, the Court **GRANTS** Bai's Motion to Dismiss as to all claims arising from the following alleged misstatements: "Antioxidant Infusions," "Antioxidant Goodness Inside," "Hello Antioxidants!," and "We infuse the antioxidant power of the superfruit, add a splash of exotic fruit juices and voila! You have 100% natural, free-radical crushing, Bai 5," as well as the bottles' thermometer graphic. The Court **DENIES** Bai's Motion to Dismiss as to the statements that its products are "Antioxidant Packed" or are an "Antioxidant Packed Beverage."

### D. "Unfair" Prong of the UCL

"California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010); *Davis v. Ford Motor Credit Co.,* 179 Cal. App. 4th 581, 595 (2009). Some courts require the plaintiff to show that the harm to the consumer of a particular practice outweighs its utility to defendant, *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861 (1999), while others require the plaintiff to allege both that (1) the practice "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and (2) the "offended" policy is "tethered to specific constitutional, statutory or regulatory provisions," *Bardin v. Daimlerchrysler Corp.,* 136 Cal. App. 4th 1255, 1268 (2006).

Plaintiffs assert that they have pled sufficient facts to state a cause of action under the "unfair" prong pursuant to either test. Opp. at 24-25. Bai contends that the FAC simply recites the elements of the cause of action without sufficiently factual allegations. Reply at 15. The Court finds that the few paragraphs of argument provided by the parties are insufficient to settle whether the facts alleged in the FAC state a cause of action under these nebulous standards. This ruling is without prejudice to either party bringing a Rule 56 motion at the appropriate time regarding the viability of Plaintiffs' claim under this prong.

Bai's Motion to Dismiss the Plaintiffs' UCL cause of action under the "unfair" prong is

**DENIED**.

### E. Claims Arising from the Label on Bai's Molokai Coconut Beverage

Bai concedes that most of the products in its Bai5 Antioxidant Infusions line contain no antioxidants with an established RDI. However, it moves to dismiss Plaintiffs' claims concerning its Molokai Coconut flavor because that product contains 100% of the daily value of vitamin C per serving, and thus satisfies FDCA requirements for listing an antioxidant nutrient content claim. *See* Mot. at 6. Bai attaches a Molokai Coconut label indicating that the product contains vitamin C. *See* Dkt. No. 30-2.

Plaintiffs' response is two-fold. First, Plaintiffs argue that the label offered by Bai contradicts the allegations made in the FAC, and thus "flies in the face of [the] basic rule" that the Court "must presume all factual allegations of the complaint to be true and draw all inferences in favor of the nonmoving party." Opp. at 6. Second, Plaintiffs attack the authenticity of the label, arguing that: (1) Plaintiffs allege that the purchased Molokai Coconut beverages that stated they were "[n]ot a significant source of . . . vitamin C;" (2) Molokai Coconut bottles still on the market state they are "[n]ot a significant source of . . . vitamin C;" and (3) Bai claims that the submitted label was in use in February 2013, but a March 2013 post on Bai's website states that the flavor would not be available until June 1st.

The Court finds the product label offered by Bai insufficient to establish—at least at the pleading stage—that the packaging of Bai's Molokai Coconut flavor stated it contained 100% of the daily value of vitamin C per serving. As an initial matter, the Declaration of Barak Bar-Cohen simply states that the attached label was used during February of 2013. The declaration makes no representation that the same label was used in any month after that date or whether the label stayed the same during the entire period Plaintiffs are alleged to have purchased the product. Accordingly, what was printed on the Molokai Coconut label and when is a contested factual issue inappropriate for resolution on the pleadings.

Bai's Motion to Dismiss the Plaintiffs' causes of action arising from statements on Bai's Molokai Coconut product is **DENIED**.

F.  **Notice Under the CLRA**

Under the CLRA, a plaintiff must give an alleged violator notice of any alleged wrongdoing 30 days before filing a suit for damages and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation." Cal. Civ. Code § 1782(a).  The alleged wrongdoer then has 30 days to remedy the problem and thereby avoid damages.  A plaintiff who files suit without properly giving notice may not recover damages under the CLRA.  Cal. Civ. Code § 1782(b).

Bai does not contest that it received a notice thirty days prior to the initiation of this action. Instead, it argues that the letter was too "bare-bones" to provide the notice anticipated by the statute. *See* Mot. at 12.  The Court disagrees.  The September 30, 2014 letter describes the problem (the allegedly unauthorized nutrient content claims on Bai5 Antioxidant Infusion beverages) and demands that Bai remedy the violations.  No more is required.

Bai's Motion to Dismiss the Plaintiffs' CLRA claim is **DENIED**.

III.  **CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Bai's Motion to Dismiss.  Plaintiffs may amend their complaint to provide the specific factual allegations discussed in Section II.A of this Order.  Plaintiffs' do not have leave to amend the complaint concerning any claims arising from the statements "Antioxidant Infusions," "Antioxidant Goodness Inside," "Hello Antioxidants!," and "We infuse the antioxidant power of the superfruit, add a splash of exotic fruit juices and voila!  You have 100% natural, free-radical crushing, Bai 5," as well as the bottles' thermometer graphic.  Plaintiffs' claims arising from those statements (and graphic) are preempted and dismissed with prejudice.   Plaintiffs shall file a Second Amended Complaint by no later than **21 days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: July 13, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

15